AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Ty'Shon Damon'n Ramos<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  3:24-mj-1547-PDB<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 6, 2024,__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(d)(1) | Transfer or Sale of a Firearm to a Convicted Felon |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Chad Lifsey, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/11/2024

_____
Judge's signature

City and state:  Jacksonville, Florida

Patricia D. Barksdale, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Chad Lifsey, being duly sworn, depose and state:

## I.   INTRODUCTION

### Identity of Affiant

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by ATF since May 2017. I am a graduate of the Federal Criminal Investigator Training Program and ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have successfully completed investigative training courses in the fields of narcotics investigations and firearms investigations in addition to conducting both state and federal felony level criminal investigations.

2. I have been assigned to the ATF Jacksonville Field Office since December 2017. As an ATF agent, I am authorized to investigate violations of United States law and to execute warrants issued under the authority of the United States. In this role, I have participated in many firearms related investigations, including but not limited to, domestic and international firearm trafficking, unlicensed firearms dealing, straw purchasing investigations, unlawful possession of firearms and ammunition, and unlawful possession of firearms not registered in the National Firearms Registration and Transfer Record (NFRTR)[1].

---

[1] The NFRTR is the central registry of all NFA firearms in the U.S. which are not in the possession or under the control of the U.S. Government. The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered).

3. Prior to my employment with ATF, I was employed as a police officer in Columbus, Georgia, for over ten years, where I served as a patrol officer, narcotics investigator, and a patrol supervisor. During my time as a narcotics investigator, I received specialized training to include drug enforcement, investigation of drug traffickers, drug recognition and terminology, clandestine labs investigator training, undercover operations, interviewing techniques, financial/money laundering training, and formal and on-the-job training in the area of electronic surveillance. I have participated in numerous drug-related investigations involving a variety of drugs. I am familiar with and have been involved in all standard methods of investigation, including management of confidential informants, visual surveillance, electronic surveillance, informant interviews, interrogations, social media investigations, and undercover operations.

4. The information in this affidavit is based on my personal knowledge as well as information, knowledge, and observations of other federal, state, and local law enforcement officers. In recounting the events that took place during the controlled purchase discussed herein, my sources include debriefing of the confidential informant who conducted the controlled purchase, live monitoring of the controlled purchase, as well as my review of surveillance audio and video and any written or otherwise recorded communications related to the controlled purchase. This affidavit does not contain all information discovered during this

investigation, rather only that believed necessary to provide a legal basis for the requested criminal complaint.

## Requested Criminal Complaint

5. I submit this affidavit in support of a criminal complaint charging Ty'Shon Damon'n RAMOS with transferring a firearm to any person, knowing or having reasonable cause to believe that such person has been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1).

## II. PROBABLE CAUSE

### Case Background

6. On November 7, 2024, I learned about crime gun trafficking lead 7705-24-01702, generated by ATF National Integrated Ballistic Information Network (NIBIN)[2] Contractor Haley Traback. I began reviewing the crime gun lead on November 13, 2024.

7. ATF Contractor Traback cited that Ty'Shon RAMOS (hereinafter RAMOS) is associated with six firearm traces[3], including firearms recovered from convicted felons.

---

[2] The NIBIN Program automates ballistics evaluations and provides actionable investigative leads in a timely manner. NIBIN evaluates ballistic evidence to identify shooters and connect a gun to multiple crime scenes.

[3] Tracing is a systematic process of tracking the movement of a firearm from its manufacture or from its introduction into U.S. commerce by the importer through the distribution chain (wholesalers and retailers), to identify an unlicensed purchaser. That information can help to link a suspect to a firearm in a criminal investigation and identify potential traffickers. Firearms tracing can detect in-state, interstate and international patterns in the sources and types of crime guns.

3

8. Based on the above information, I initiated an investigation when I learned that RAMOS had a firearm listed for sale on Floridaguntrader.com[4].

## Controlled Communications

9. On December 3, 2024, at approximately 2131 hours, an ATF confidential informant (hereinafter, "CI")[5] conducted a recorded call to (604) 335-4473, the phone number RAMOS posted on Floridaguntrader.com. I have reviewed the recording of this call. The following is a summary of the conversation.

10. During the call, the CI introduced himself to RAMOS and inquired about purchasing a firearm from RAMOS. The CI told RAMOS that he would be coming to Jacksonville from Tampa and asked RAMOS if he (RAMOS) could conduct the firearm transaction on Friday, December 6, 2024.

11. On the call, RAMOS stated, "I got a fully too bro." RAMOS clarified that he had an "ARP" (an acronym for AR-15 style pistol) with a "fully in that bitch." RAMOS then mimicked a machinegun sound with his mouth to demonstrate the rate of fire. The CI asked how much he wanted for it. RAMOS explained the price included the ARP and the "drop in"[6]. RAMOS explained the rate of fire of the

---

[4] Florida Gun Trader is an online marketplace that connects buyers and sellers of firearms and accessories.
[5] According to the National Criminal Crime Information Center (NCIC) and court documents from the Middle District of Florida, the CI has been convicted of a felony, that is a crime punishable by a term of imprisonment exceeding one year, for Access Device Fraud in violation of 18 USC §§ 1029(a)(5), (b) and (c)(1)(A)(ii), and 2.

[6] A machinegun conversation device (MCD), commonly known as a "swift link" or "drop in auto sear" in and of itself (even without the host weapon) is a part designed and intended solely and exclusively, for use in converting a weapon into a machinegun; therefore, it is a "machinegun" as defined in 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(24). Being a machinegun, it is also a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

4

ARP. Based on my training and experience, I know that "drop in" and the reference to a "fully" firearm can be code for describing a fully automatic firearm, and that a "drop in" specifically refers to a machinegun conversion device ("MCD").

12. Also, during the recorded call, the CI explained to RAMOS that he (the CI) could not go into the store and buy firearms because the CI had been to prison. RAMOS stated he (RAMOS) did not care about the CI's background and added if they were going to do business, they were going to do business. The CI explained that he wanted to be straight up with no pressure because he had to come all the way to Jacksonville.

13. RAMOS confirmed he had the firearm the CI inquired about available for sale. RAMOS also said he would sell the ARP (with the MCD) to the CI for $1,300.00. RAMOS reported this firearm has the "shell catcher bag."[7] RAMOS also stated he would send the CI a video of him (RAMOS) shooting "the ARP."

14. RAMOS told the CI that "the military ain't even got the shit I got." RAMOS mimicked the sound of a machinegun again. RAMOS then sent the CI a photograph of the "drop in" installed and stated that was what makes it "fully" and another picture of the ARP. I have reviewed these photographs and included them below. RAMOS confirmed again he would take $1,300.00 for the ARP.

---

[7] A brass catcher mounts to an AR-15 style firearm. Its lawful purpose is to prevent brass from being scattered around one's shooting area and to prevent hot brass from hitting nearby shooters.

5

 

MCD – "Swift Link" or "Drop in Auto Sear."

### December 6, 2024, Controlled Purchase:

15. On December 6, 2024, at 1000 hours, ATF Jacksonville Special Agents met at a predetermined location and conducted a briefing about the anticipated firearms purchase from RAMOS. Prior to the operation, I provided the CI with $2,400.00 of previously recorded ATF Agent Cashier funds. I conducted a search of the CI and found no contraband. ATF SA Dan McKay and ATF SA James Wiley conducted a search of the CI's vehicle and found no contraband. I equipped the CI with a live audio recording device and activated the device for the purpose of live monitoring.

16. The CI then drove to the Target located at 6331 Roosevelt Blvd, Jacksonville, Florida. At 1038 hours, the CI contacted RAMOS by phone and advised RAMOS that he was at this location. RAMOS agreed to meet the CI at that location.

6

17. At 1057 hours, while conducting surveillance, ATF special agents observed RAMOS arrive at the meeting location as the passenger in a 2002 Lexus Sedan, bearing Florida tag RGVK74 (hereinafter, "suspect vehicle"). The driver[8] was a black male subject wearing dark hoodie with a puffy style hair. RAMOS exited the suspect vehicle and entered the CI's vehicle. According to the audio recording of their meeting, the CI and RAMOS discussed firearms generally. During this conversation, surveilling agents observed the driver of the suspect vehicle exit the car, open the trunk and return to the driver's seat. Then, surveilling agents observed RAMOS exit the CI's vehicle, walk to the trunk of the suspect vehicle, and retrieve what appeared to be a rifle case (which we would later learn contained a Sig Sauer, Inc. Model: SIG516, 5.56x45mm rifle, bearing serial number 20J064128).

18. RAMOS then returned to the CI's vehicle and showed the CI the rifle. RAMOS ensured the CI that the "fully" (referring to the MCD) was in the firearm. RAMOS did not separate the upper receiver from the lower receiver. The CI again reiterated that he (the CI) was a felon and that he (the CI) had spent several years in prison. The CI then counted $1,400.00 for the Sig Sauer rifle and provided it to RAMOS. I have since reviewed the audio-video recording of this transaction and observed RAMOS conducting the firearm sale.

---

[8] The driver was later identified as Kenneth Gregory DEMPS III (B/M, DOB: 09/15/1994) during a traffic stop and arrest that occurred in Clay County, FL after the controlled purchase.

19. After transferring the rifle, RAMOS told the CI that he (RAMOS) would ask his brother if he was willing to sell a Ruger 57 handgun. The CI told RAMOS that he (the CI) had $1,000.00 left and would pay that much for the Ruger handgun. At that time, RAMOS exited the CI's vehicle and stood between the CI's vehicle and the driver window of the suspect vehicle. It appeared that RAMOS was speaking with the driver of the suspect vehicle. Following the operation, upon debriefing the CI, I learned that RAMOS had informed the CI that his brother was willing to sell the firearm for $1,075.00 but ultimately agreed to sell it for $1,000.00 if the CI agreed to pay the remainder later. The CI agreed to these terms.

20. According to the audio-video recording of the transaction, RAMOS reentered the CI's vehicle and transferred over a Ruger 57, 5.7x28 mm pistol, bearing serial number 643-81603 in exchange for $1,000.00 of ATF AC funds.

21. At the conclusion of the firearm transaction, the CI traveled to the debriefing location. RAMOS and the suspect vehicle were last seen traveling south on Blanding Boulevard. At 1119 hours, I deactivated the recording equipment, and I conducted a post operation search of the CI. No contraband was found. ATF SA Jason Slosson and SA Dan McKay conducted a post operation search of the CI's vehicle. No contraband was found.[9]

---

[9] On December 7, 2024, the CI contacted me and stated he had discovered an AR-15 style magazine that was not recovered during the transfer of evidence from the CI's vehicle to ATF custody. Arrangements were made for the empty AR-15 to be turned over to ATF for evidence purposes.

8

22. SA Slosson confirmed the Sig Sauer, Inc. rifle did not have a MCD installed. I directed the CI to contact RAMOS by phone to inform him the firearm did not have the MCD he paid for. RAMOS did not answer the phone call(s) or subsequent text messages.

23. Once back at the ATF office, I queried serial numbers of both firearms. I learned that the Sig Sauer, Inc. Model: SIG516, 5.56x45mm rifle, bearing serial number 20J064128 was reported lost or stolen from a trooper with the Florida Highway Patrol (FHP). The Ruger firearm had not been reported stolen or lost.

### III. CONCLUSION

24. Based on the information in this Affidavit, I respectfully submit that there is probable cause to believe that on December 6, 2024, Ty'Shon Ramon'n RAMOS did unlawfully sell a firearm to the CI, knowing or having reasonable cause to believe that the CI had been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

25. I state that the above information is true and correct to the best of my knowledge, and I ask that the requested criminal complaint be issued.

Respectfully submitted,

_____
Chad Lifsey
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me, on this 11th day of December 2024.

_____
PATRICIA D. BARKSDALE
UNITED STATES MAGISTRATE JUDGE